IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALISA ANN NORRIS )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>)<br>    Defendant. ) | CASE NO. 2:11-cv-0425-TFM<br>[wo] |

## **MEMORANDUM OPINION AND ORDER**

("Plaintiff" or "Norris") applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, on September 11, 2007. (Tr. 94, 155). Norris alleged that she became disabled on May 30, 2007 (Tr. 94) from arthritis and problems with her feet, knees and back. (Tr. 142). Norris timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on October 21, 2009. (Tr. 17-27). Norris in turn petitioned for review to the Appeals Council who rejected review of Norris's case on April 6, 2011. (Tr. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584

n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

At the hearing Norris testified that she was 53 years old and that she completed the twelfth grade. (Tr. 31). Norris said that she last worked in 2007 as a medical receptionist. (Tr. 32). Norris was a medical receptionist for twenty-five years. (Tr. 32). She was as an office manager for three years. (Tr. 32-33). Norris testified that she has severe pain in her feet, which were crushed in an automobile accident. Norris said her feet get stiff and swell after sitting a short time and that on an average day her foot pain is about an eight on a ten point scale with ten being the highest. (Tr. 33). Norris claims she has severe back pain when she sits for much longer than an hour. She has three

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

compression fractures in her back from the accident and arthritis too. (Tr. 34-35). She testified that she takes arthritis inflammation medication and Percocet daily for pain which gives her some pain relief. (Tr. 34). Norris also testified that she suffers from depression. She reports that taking Prozac daily generally manages this condition. Indeed she states, "I'm functional but I do have days where I don't want to do anything." (Tr. 35). She estimates that her depression is incapacitating about once or twice a month and reports that weekends are "bad". (Tr. 39).

Norris admits she can walk 30 to 45 minutes, stand 30 to 35 minutes, sit one hour or less, and lift nothing heavier than a gallon of milk. (Tr. 35-36). She does her own grocery shopping, drives short distances, can climb stairs, bend, stoop, squat, and use her hands. (Tr. 36). Norris also stated that she can perform certain activities of daily living such as cook a simple meal, bathe, and dress and wash clothes. (Tr. 37). She said someone helps her with heavy cleaning, but that she can make the beds and take out the trash. (Tr. 37). Further, Norris attends church or sees her family two or three times a week. (Tr. 37). She spends her days watching television or reading and tending to her plants on the patio. However, she states that she is not always able to follow the television show or book. (Tr. 37-38).

Norris and her husband were in a car accident in 2002 which killed her husband. (Tr. 38). She returned to work after this accident but stopped in 2007 because of increased symptomatology. ( Tr. 38). She said that she had seen her family doctor for about 14 years. (Tr. 38-39).

The ALJ found the chronic foot, ankle, and back pain Norris has from a prior motor vehicle accident are "severe" impairments, but that they do not meet or medically equal any of the Commissioner's listed impairments. (Tr. 23). She additionally found that Plaintiff's subjective allegations of pain and functional limitations were not totally credible. (Tr. 24). The ALJ further found that Plaintiff retained the residual functional capacity to perform light work in that she could occasionally lift 20 pounds and frequently lift 10 pounds, and sit/stand/walk for 6 hours with the ability to alter position at 1-2 hour intervals. (Tr. 23). Plaintiff's past relevant work as a medical receptionist, office manager, and accounts receivable clerk was not precluded by the residual functional capacity findings. Thus, the ALJ found that Plaintiff is not disabled. (Tr. 25-26).

## IV.  MEDICAL HISTORY

Norris sustained compression fractures in her thoracic spine, a right leg fracture, and dislocation of the right foot during an October, 2002 car wreck which killed her husband. (Tr. 253-54). She was admitted into the Emergency Room of Mizell Memorial Hospital on October 4, 2002. (Tr. 252). Dr. Gilbert Holland, an orthopedic surgeon, performed surgery on Plaintiff's lower legs and discharged her on October 10, 2002 in "stable" condition and with a "good" prognosis. (Tr. 253-54). X-rays taken December 9, 2002 show that Plaintiff's fractures were healing. (Tr. 286). Again in May 2003, Dr. Holland performed surgery to decompress tendons in Plaintiff's right heel. (Tr. 281-82). By December, 2003, Dr. Holland reports Plaintiff "is improved on Mobic. She reports diminished pain in her right ankle. She is ambulating well." (Tr. 276).

Plaintiff's primary care provider from September 2002 through June 2009, was Dr. Roger Boyington, a family practice physician at Covington Family Care. (Tr. 38-39). In addition, Plaintiff worked for Dr. Boyington as a medical receptionist and an office manager for a number of years. (Tr. 32-33; 315). She complained of stress, anxiety and depression in September 2002 and Dr. Boyington prescribed Zoloft. (Tr. 384). In October 2003, Plaintiff complained of "low back pain". (Tr. 374). In August 2004, Plaintiff's Zoloft was changed to Wellbutrin. (Tr. 365). In June 2006, Dr. Boyington prescribed Percocet for Plaintiff's foot pain. (Tr. 345).

In July 2004, Plaintiff was seen by Dr. David Alford, an orthopedic surgeon. He reported to Dr. Boyington that he thought Norris needed surgery and that she was very concerned with how Dr. Boyington would manage his office in her absence. Dr. Alford reported that following surgery Norris could return to work within a week or so, if she could be in a "seated " position. However, she would "have to remain strict nonweight bearing on crutches for at least 6 weeks." (Tr. 315). In October 2004, Dr. Alford, again recommended Plaintiff have a bone graft performed on her right foot. She declined the surgery explaining that the "pain is not enough to warrant" the procedure at this time. (Tr. 313).

In July 2008, Dr. Boyington completed a "Physical Capacities Evaluation" form. (Tr. 487). He indicated Plaintiff could occasionally lift up to 10 pounds; sit for 4 hours per day; stand and/or walk for 1 hour per day; and that she had manipulative limitations. (Tr. 487).[5]  Dr. Boyington noted that his assessment was based on Plaintiff's "chronic

---

[5] Sedentary work involves lifting no more than 10 pounds at a time (and occasionally lifting or carrying articles like docket files, ledgers, and small tools), and sitting for about six hours total

foot pain". (Tr. 487). In July 2008, he also completed a check the box "Clinical Assessment of Pain" form in which he indicated that Plantiff's pain is "distracting to adequate performance of daily activities or work." He also indicated that physical activity would "[g]reatly increase[] pain and to such a degree as to cause distraction . . .or total abandonment of task[s]." However, Dr. Boyington indicated that Plaintiff's prescribed medication may create "some limitations" with work, "but not to such a degree as to create serious problems in most instances." (Tr. 488). In November 2008, Dr. Boyington prescribed Mobic for arthritis in Plaintiff's feet and knees (Tr. 491), and in April 2008, he concluded that Norris was "doing well overall". (Tr. 497).

In January 2008, Dr. Randall Jordan, Psy.D, performed a consultative psychological examination of Norris. (Tr. 446-448). The examination results were normal, with normal memory and social functioning. Dr. Jordan diagnosed Plaintiff as one who suffers from "Depressive Disorder NOS (311)" and "Chronic pain", but concluded that her Global Assessment of Functioning (GAF) was 60, which indicates that her difficulties were of only moderate severity. (Tr. 447).[6] Plaintiff said she took anti-depressants in the past. (Tr. 446). Dr. Jordan concluded that Plaintiff could perform simple work and work involving more complex instructions "if she is medically able", and that her ability to respond to others and everyday work pressures was only "mildly" compromised. (Tr. 448).

---

and standing or walking for about two hours total in an eight-hour day. *See* 20 C.F.R. § 416.967 (a); SSR 83-10, 1983 WL 31251, at *5.

[6] *See Diagnostic and Statistical Manual of Mental Disorders – Text Revision (DSM-TR),* 34 (4th ed. 2005). By contrast a GAF of 61 would indicate only some mild symptoms or difficulties.

Also in January 2008, Dr. Darshana V. Vyas, M.D. performed a consultative physical examination of Norris. (Tr. 449-453). Examination results were mostly normal. Plaintiff did, however, exhibit "mild" tenderness in the lumbar spine, as well as tenderness and reduced range of motion in the ankles and feet. Additionally, Dr. Vyas noted Plaintiff suffers from chronic pain in both feet, chronic back pain, and anxiety with depression which was secondary to chronic pain. (Tr. 452-453). In February 2008, Kim Zweifler, Ph.D., a State agency medical consultant, completed a "Psychiatric Review Technique" form in which she concluded that Plaintiff had no severe mental impairments. (Tr. 454-467).

In September 2009, Dr. Keith G. Vanderzyle performed a consultative physical examination of Plaintiff. (Tr. 502-514). Plaintiff exhibited no tenderness in her back and she had no tenderness or reduced range of motion in her ankles. Her right foot was normal, although she had lost her arch and her left ankle was normal. (Tr. 502-503, 512-513). Dr. Vanderzyl concluded that Plaintiff could frequently lift up to 10 pounds, and occasionally lift up to 20 pounds; sit for one hour at a time, for a total of 4 to 6 hours per day; stand for one hour at a time, for a total of 2 to 4 hours per day; walk for one hour at a time , for a total of 2 to 4 hours per day. (Tr. 504-505).[7]

### V. ISSUES

Norris raises two issues for judicial review:

---

[7] Light work involves lifting no more than 20 pounds at a time (with frequent lifting or carrying of objects weighing up to 10 pounds), and standing or walking, off and on, for a total of approximately six hours in an eight-hour day. *See* 20 C.F.R. § 416.967(b);Social Security Ruling (SSR) 83-10, 1983 WL 31251 at *5-6.

(1)  Whether the ALJ failed to accord proper weight to the medical opinion of Dr. Boyington, Norris' treating physician?  (*See* Doc. 11 at 6).

(2)  Whether the ALJ erred in failing to find Norris' depression to be a "severe" impairment?  (*See* Doc. 11 at 6).

## VI.  DISCUSSION

**I.  The ALJ accorded proper weight to the medical opinion of Dr. Boyington.**

Dr. Roger Boyington, a general practitioner and Norris' treating physician, completed a Physical Capacities Evaluation form ("PCE") and a Clinical Assessment of Pain form ("CAP").  (Tr. 487-88).  In the PCE Dr. Boyington indicates that Plaintiff could lift ten pounds occasionally and five pounds frequently; sit for four hours in an eight-hour day, stand or walk in combination for only one hour during an eight hour day, and would have multiple postural and manipulative limitations.  (Tr. 487).  In the CAP Dr. Boyington checked the boxes indicating that Norris experiences pain "to such an extent as to be distracting to adequate performance of daily activities or work" and that physical activity would "greatly increase[] pain and to such a degree as to cause distraction from tasks or total abandonment of task."  With respect to the affect of Norris' medication on her ability to work, Dr. Boyington checked the box indicating "[s]ome limitations maybe present but not to such a degree as to create serious problems in most instances."  (Tr. 488).

"Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."  *Mason v. Shalala*, 994 F.2d 1058, 1065 (4th Cir.

1993). "[W]here these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect....'" *Id*. (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3r Cir. 1986); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983)).  However, in *Hinders v. Barnhart,* the district court distinguished the *O'Leary* case on the basis that in *O'Leary* the doctor completing the check the box form had only seen Plaintiff twice for consultative examinations which were two years apart.  349 F.Supp.2d 1218,1226 n.3 (S.D. Iowa 2004).  To the contrary in *Hinders,* the "form was completed by a treating physician who had a long relationship with Plaintiff" and was a "questionnaire" which was "much more detailed than an RFC check list" and the treating physician's opinion was "consistent with the other medical and vocational evidence in the record."  *Id.*

      Although Dr. Boyington has a long relationship with Plaintiff, the form he completed does not give to the court details of Plaintiff's alleged disability.  Additionally, since Dr. Boyington has not only treated Plaintiff for a number of years, but as her employer has seen her ability to work on a day to day basis, it is not unreasonable for the court to expect that Dr. Boyington would provide additional description and details of how Plaintiff's alleged disability affects her ability to work.  Instead Dr. Boyington merely checked the boxes, which in his opinion generally described Plaintiff's condition, but did not add any personal observations or references to any medical records which would shed light on how Plaintiff's alleged conditions affect her ability to work on a day-to-day basis.  Furthermore, Dr. Boyington's opinion is not completely consistent with the other medical and vocational evidence in the record.

The Eleventh Circuit has established that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips,* .357 F.3d at 1241 (11th Cir. 2004)(citing *Lewis,* 125 F.3d at 1440). In *Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and that the failure to do so constitutes reversible error. 125 F.3d at 1440. Furthermore, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. *Holley v. Chater*, 931 F.Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

However, the simple fact that a treating physician's opinion is included in the evidence does not require the ALJ to follow it but rather the opinion may be given less weight or dismissed entirely. *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D. Ala. 2001) (finding that the ALJ properly considered the treating physician's medical opinions based on the objective medical evidence in the record as a whole it was "entirely reasonable" when the treating physician's records and notes were inconsistent). When an ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be sufficient detail set forth by the ALJ for the court to conduct a meaningful review. *Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr.

21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician because insufficient detail was set forth by the ALJ for the reviewing court to be able to conduct any kind of meaningful analysis).

The ALJ assigned some weight to Dr. Boyington's conclusory opinion which was presented solely in a check the box form, but did not assign it "determinative weight". (Tr. 24-25). Indeed, Social Security Ruling (SSR) 96-2p requires a treating physician's opinion to be accepted, i.e., assigned controlling weight, only where the opinion is "well supported" by clinical and diagnostic studies, and where the opinion is "not inconsistent" with other substantial evidence of record. Dr. Boyington's records, other than the check the box form, do not reflect that he placed any limitations on Plaintiff's activities, and he provided only conservative treatment in the form of medication. Although the records indicate that Plaintiff complained of depression, back pain, and foot pain (Tr. 345, 374, 384), the records do not reflect that Plaintiff complained of experiencing extreme functional limitations. *See Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir.1996) (Allegations of disabling pain may be discounted because of inconsistencies such as conservative medical treatment.)

Additionally, Dr. Boyington's assessment, which he indicated was based on Plaintiff's foot problems and arthritis in her hands, was not consistent with Plaintiff's own testimony. Indeed, although Dr. Boyington concluded that Plaintiff has significant manipulative limitations (Tr. 487), Plaintiff admitted that she had no problems using her hands. (Tr. 36). Furthermore, Dr. Boyington concluded Plaintiff was significantly limited in her ability to sit (Tr. 487), but did not provide any explanation how problems

with Plaintiff's feet or hands would result in such a limitation. Accordingly, "good cause" exists for the ALJ to reject Dr. Boyington's conclusions because the doctor failed to identify any evidence supporting his stated opinions. (Tr. 418-420). *See* 20 C.F.R § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Phillips,* 357 F.3d at 1240-41 (Good cause exists not to assign substantial weight to a treating physician's opinion when the opinion is conclusory.)

Rather than rely upon the conclusory and unsupported opinions of Dr. Boyington, the ALJ assigned "determinative weight" (Tr. 24) to the opinion of Dr. Keith E. Vanderzyl, who performed a consultative exam of the Plaintiff on September 8, 2009. (Tr. 502-513). Dr. Vanderzyl noted in his comprehensive examination that Plaintiff had no back tenderness; no tenderness or reduced range of motion in her ankles; a normal right foot, except for the lack of an arch; and a normal left ankle. (Tr. 502-03; 512-13) Based upon his examination and review of the medical evidence of record, Dr. Vanderzyl concluded that Plaintiff could frequently lift up to 10 pounds, and occasionally lift up to 20 pounds; sit for 1 hour at a time, for a total of 4 to 6 hours per day; stand for 1 hour at a time, for a total of 2 to 4 hours per day; walk for 1 hour at a time, for a total of 2 to 4 hours per day. (Tr. 504-505). Based upon a careful review of the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. (Tr. 23). Accordingly, the court concludes the Commissioner's decision is supported by substantial evidence. *See Ellison v. Barnhart,* 355 F.3d 1272,1275 (2003).

**II. The ALJ did not err in finding that Norris' depression was "non-severe".**

Norris claims that the ALJ erred in finding that Norris' depression was non-severe. Indeed, in considering the Plaintiff's allegations of depression, the ALJ stated as follows:

> [T]he claimant's allegation of depression . . . is found to be mild in severity with a GAF of 60 that does not impact her work performance. A mental assessment dated January 7, 2008 concludes that the claimant's daily living skills are not compromised by intellectual or psychological function. She has been found to exhibit normal social functioning, and admits to spending the majority of the day cleaning, reading, watching television and being with friends. (Exhibit 7F). The impairment is therefore considered non-severe.

(Tr. 24). Plaintiff did not list depression as a disabling condition in her application for DIB filed on October 15, 2007. (Tr. 94-101;141-149). Rather she claimed that her ability to work was limited by "[p]roblems w/feet, knees and back; arthritis." (Tr. 142). *See Street v. Barnhart,* 340 F.Supp.2d 1289, 1292-93 (M.D. Ala. 2004) (Court found ALJ did not err in finding plaintiff's mental impairments non-severe where among other factors plaintiff failed to list mental impairments among his claims of disability.).

Following Plaintiff's involvement in a car accident in October 2002, which caused the death of her spouse and required Plaintiff to have surgery and to be hospitalized for six days (Tr. 253-254), the record reflects that Plaintiff regularly complained to Dr. Boyington of anxiety and depression and that he prescribed medication for these conditions. (Tr. 336-384). Dr. Boyington first prescribed Zoloft for Plaintiff (Tr. 383), but later changed her prescription to Wellbutrin. (Tr. 365). Plaintiff testified at the administrative hearing that she takes Prozac daily for depression but that she is "functional". (Tr. 35). She further testified that she shops for her own groceries, has a

driver's license and drives short distances. (Tr. 36). She said that she can climb stairs, bend, stoop, squat, and use her hands. (Tr. 36). She also testified that during the week she spends time with her family, attends church, and reads or watches television, even if she does not always follow the book or television show. (Tr.37-38).

The record does not reflect that Plaintiff experiences functional limitations from her depression. Rather Plaintiff states that she is "functional" when taking her anti-depression medication. (Tr. 35). *See Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988). (A remediable or controllable medical condition is generally not disabling.) (Citations omitted). Also the record does not reflect that Plaintiff received sustained treatment for depression other than being prescribed medication. *See Giles ex rel. Dowdell v. Barnhart,* 182 F. Supp. 2d 1195, 1200 (M.D. Ala. 2002). (The court affirmed the ALJ's finding that plaintiff's impairments were "non severe" where "[a]lthough the claimant has been treated for these conditions, the medical records do not document any **long-term** or **sustained** treatment for these conditions nor any restrictions upon the claimant's functioning as a result of these conditions."). (Emphasis in original.). Moreover, the record does not reflect that Plaintiff sought mental health treatment of any kind. *See Watson v. Heckler,* 738 F.2d 1169, 1173 (11th Cir. 1984). (A claimant's failure to seek treatment is a proper factor for the ALJ to consider.)

The ALJ's determination that Plaintiff's depression was non-severe is supported by the opinion of Dr. Randy Jordan, examining Psy.D., who stated that Plaintiff experienced no significant functional limitations as a result of her depression. (Tr. 446-48; 22-24). The ALJ's determination was further supported by the opinion of Dr. Kim

Zweifler, Ph.D., who completed a Psychiatric Review Technique form, and concluded Plaintiff had no severe mental impairments.  (Tr. 454-467).  *See* 20 C.F.R § 404.1527(d)(5) (we generally give more weight to the opinion of a specialist about medical issues related to his or her specialty); SSR 96-6p (findings of fact by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources.)

Finally, although the ALJ did not find depression to be a severe impairment at step two of the sequential evaluation, it is undisputed that the ALJ specifically discussed the Plaintiff's depression in her decision.  (Tr. 24).  *See Newsome ex rel. Bell v Barnhart,* 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006).  (Failure of ALJ to make determination as to severity of impairment was harmless error where ALJ thoroughly discussed the evidence of the impairment.)  Moreover, under agency regulations the ALJ considers all of Plaintiff's impairments, both "severe" and "nonsevere", in the sequential evaluation process.  *See* 20 C.F.R.§ 416.923 (In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.)  Accordingly, the court concludes that any error committed by the ALJ with respect to analyzing the severity of Plaintiff's depression is "harmless", *see Newsome, id.,* at 1201, and that "substantial evidence" supports the Commissioner's decision.  *Miles,* 84 F.3d at 1400.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 28th day of February, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE